# IN THE

# UNITED STATES COURT OF APPEALS

for the

# FOURTH CIRCUIT

———

**RECORD NO. 25-1058**

———

## MARGARET P. BYERS, Co-administrator of the Estate of Charles M. Byers, Deceased; MICHAEL C. BYERS, Co-administrator of the Estate of Charles M. Byers, Deceased,

*Plaintiffs/Appellees,*

v.

## GORDON J. PAINTER,

*Defendant/Appellant.*

———

**RESPONSE BRIEF OF APPELLEES**

———

Paul McCourt Curley, Esq. VSB 43974
SIX EAST LAW GROUP –
CURLEY LAW FIRM, PLLC
6 East Broad Street
Richmond, Virginia 23219
(804) 355-8273
paul.curley@sixeastlaw.com

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-1058__      Caption: __Margaret Byers et al v. Gordon J. Painter__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Margaret P. Byers and Michael C. Byers, Co-Administrators of the Estate of Charles M. Byers, deceased__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐ YES ☑ NO


2.     Does party/amicus have any parent corporations?     ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐ YES ☑ NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Paul McCourt Curley                    Date: _____1/31/2025_____

Counsel for: Margaret and Michael Byers

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………. ii

INTRODUCTION………………………………………………….…………………… 1

STATEMENT OF JURISDICTION………………………………………………….. 3

STATEMENT OF THE ISSUES FOR REVIEW…………………………………………. 4

STATEMENT OF THE CASE…………………………………………………………….. 4

STATEMENT OF THE FACTS…………………………………………………………… 5

SUMMARY OF THE ARGUMENT………………………………………………………...10

ARGUMENT……………………………………………………………………….…….. 11

STANDARD OF REVIEW……………………………………………………………… 11

OFFICER PAINTER IS NOT ENTITLED TO QUALIFIED IMMUNITY, AS CORRECTLY HELD BY THE DISTRICT COURT, AS CHARLES BYERS WAS NOT A THREAT TO ANYONE…………………………………………………………………………….. 12

OFFICER PAINTER IS NOT ENTITLED TO QUALFIED IMMUNITY AS IT WAS CLEARLY ESTABLISHED THAT DEADLY FORCE COULD ONLY BE USED WHEN A SUSPECT MAKES A THREATENING MOVE WITH A WEAPON—SIMPLY DISOBEYING COMMANDS FROM AN OFFICER DOES NOT ENTITLE AN OFFICER TO KILL A SUSPECT……………………………………………………………………………. 14

CONCLUSION………………………………………………………………………… 16

<u>TABLE OF AUTHORITIES</u>

Cases:

<u>Aleman v. City of Charlotte</u>, 80 F.4th 264 (4th Cir. 2023)………………………………….. 11, 12, 13

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)……………………………… 10

<u>Atkinson v. Godfrey</u>, 100 F.4th 498 (4th Cir. 2024)………………………………………………… 10

<u>Bell Atl. Corp. v. Twombley</u>, 550 U.S. 544, 555, 570 (2007)……………………………………… 10

<u>Betton v. Belue</u>, 942 F.3d 184, 191 (4th Cir. 2019)………………………………………………… 11

<u>Blanford v. Sacramento County</u>, 406 F.3d 1110 (9th Cir. 2005)…………………………………… 12

<u>Doriety v. Sletten</u>, 109 F.4th 670 (4th Cir. 2024)…………………………………………………… 10

<u>Elliott v. Leavitt</u>, 99 F.3d 640, 643 (4th Cir. 1996)………………………………………………... 11

<u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007)………………………………………………………... 10

<u>Evans v. Chalmers</u>, 703 F.3d 636 (4th Cir. 2012)………………………………………………….. 10

<u>Franklin v. City of Charlotte</u>, 64 F.4th 519, 531 (4th Cir. 2023)…………………………………… 11

<u>Graham v. Conner</u>, 490 U.S.386 (1989)……………………………………………………………. 11

<u>Hensley ex rel. North Carolina v. Price</u>, 876 F.3d 573, 582 (4TH Cir. 2017)……………………… 11

<u>Kisela v. Hughes</u>, 138 S.Ct. 1148 (2018)…………………………………………………………... 13

<u>Randall v. United States</u>, 30 F.3d 518, 523 (4th Cir. 1994)……………………………………….. 10

<u>Shaw v. City of Selma</u>, 884 F.3d 1083 (11th Cir. 2018)…………………………………………... 12

<u>Sigman v. Town of Chapel Hill</u>, 161 F.3d 782, 786 (4th Cir. 1998)……………………………….. 12

<u>Tennessee v. Garner</u>, 471 U.S. 1, 11 (1985)………………………………………………………... 11

<u>Waterman v. Batton</u>, 393 F.3d 471, 477 (4th Cir. 2005)…………………………………………… 11

<u>Yates v. Terry</u>, 817 F.3d 877, 883 (4th Cir. 2016)…………………………………………………... 11

Statutes:

U.S. Const., Amend, IV…………………………………………………………… *Passim*

28 U.S.C. § 1291……………………………………………………………………… 4

28 U.S.C. § 1331……………………………………………………………………… 3

28 U.S.C. § 1983……………………………………………………………………...3

## <u>INTRODUCTION</u>

The facts in this case, as alleged by the Plaintiffs' Amended Complaint and as contained in the BWC video attached to the Plaintiffs' Amended Complaint, easily support the District Court's correct finding that Officer Painter is not entitled to qualified immunity. To make such legal finding, the District Court carefully reviewed the BWC video and the Amended Complaint and found that there "was no basis for Officer Painter to believe that Mr. Byers was a threat to either officer" or anyone else when Officer Painter fired seven bullets at him, as he was backing and turning away from Officer Painter and then running for his life. Officer Painter killed Charles Byers by shooting him in his back, as alleged in the Amended Complaint and shown on the BWC video, and Charles Byers was no threat to anyone, immediate or otherwise. Since Charles Byers was not a threat, as correctly found by the District Court, it is immaterial which legal test is applied to the determination of qualified immunity, "Moment of Threat" or "Totality of the Circumstances", as a finding that Charles Byers was no threat when Officer Painter used deadly force must result in the legal finding that Officer Painter is not entitled to qualified immunity, regardless of how the District Court made its correct determination. This argument by Officer Painter is a stereotypical red herring, in any case.[1]

When the Plaintiffs and their counsel read the opening brief of Officer Painter, as written by Chesterfield County, they were left with the overwhelming sense that Chesterfield County and Officer Painter never watched the BWC video of the killing of Charles Byers; certainly not objectively, as the opening brief is that surreal. The claims made by Chesterfield County and Officer

---

[1] Strangely, while Chesterfield County and Officer Painter make this argument throughout the opening brief, the argument is not listed in the "Statement of Issues", which reinforces the argument's lack of importance and relevance in this appeal.

Painter in the opening brief are simply fantastical as they attempt to create the picture of a dangerous violent felon running around a neighborhood wildly swinging an axe at everyone. They then use this fictional picture to argue that Officer Painter is entitled to qualified immunity because Charles Byers' death was necessary. This greatly saddens the Plaintiffs, Charles Byers' parents, as it does not even resemble the truth about their son. Basically, Chesterfield County and Officer Painter are seemingly continuing their cover up of the incident that began immediately after the unlawful shooting of Charles Byers on July 8, 2023. In its statements to the public on or about July 8, 2023, Chesterfield County claimed that "Byers kept advancing on Officers with a weapon in his hand" and that "Officer Painter fired an unknown number or rounds" "to stop the subject's advance". These statements were known by Chesterfield County and Officer Painter to be untrue, and they refused to release the BWC video which clearly showed that Charles Byers never advanced on the officers and was retreating when Officer Painter inexplicably began shooting him. Once the BWC was released, these claims were publicly disproven, but neither Chesterfield County nor Officer Painter ever corrected the statements. Thankfully, Chesterfield County's and Officer's Painter's efforts to sway this Court with their fantasy will prove to be wasted effort, as this Court must only view the facts of this case in the light most favorable to the Plaintiffs—the actual facts as alleged in their Amended Complaint and as shown on the BWC video.2 A careful review of the BWC video by this Court will

---

2 Chesterfield claims in the "statement of facts" in the opening brief that "the facts" utilized in the brief come "solely from the allegations of [Plaintiffs'] Amended Complaint, the BWC video from the two officers on the scene, and the audio from the dispatch leading up to the incident". However, other sections of their opening brief are replete with "factual" allegations that do not appear in the Amended Complaint or the BWC video and the dispatch audio is not part of the Amended Complaint. Since this Court must only review the facts as contained in the Amended Complaint and exhibits, which includes the BWC video, and since the dispatch audio was not a part of the Amended Complaint, reference to such "facts" is meaningless. The plaintiffs will not waste the time necessary to identify each allegation made by Chesterfield and Officer Painter

result in the same finding as the District Court. No fancy legal brief filed in this case can take the place of the video of what transpired, regardless of how hard Chesterfield and Officer Painter try to spin the facts or case law.

For the reasons stated herein and in the District Court's well-reasoned and thoughtful opinion, the Plaintiffs respectfully request that this Court affirm the District Court's decision that Officer Painter is not entitled to qualified immunity, allowing the plaintiffs to seek the only justice available to them for their son. True justice will unfortunately never again be known to the plaintiffs. At this time Officer Painter is alive and still employed as a gun carrying officer of Chesterfield County, receiving not the slightest reprimand for his conduct, despite having been found to have used excessive force against citizens multiple times, including in this Court. This Court must find, again, that Officer Painter is not entitled to qualified immunity for his use of excessive force against citizens. Maybe then Chesterfield County will take actions that will protect the citizens of Chesterfield County from its officers. Even though Charles Byers can never experience such benefit, it is important to his parents that others do.

## STATEMENT OF JURISDICTION

Count III of the Amended Complaint alleges a cause of action arising under 42 U.S.C. (Section) 1983. Therefore, the District Court had federal question subject matter jurisdiction pursuant to 28 U.S.C. (Section) 1331. On January 13, 2025 the District Court entered an order correctly denying Officer Painter's motion to dismiss based on qualified immunity to Count III of

---

that does not appear in the Amended Complaint and BWC video. However, the plaintiffs will gladly identify each such instance when Chesterfield and Officer Painter claim "facts" that do not exist in the pertinent record, if requested. From the plaintiffs' perspective, the issue is not whether Officer Painter is a liar but rather whether Officer Painter killed Charles Byers without legal justification.

the Amended Complaint, a "final decision" for purposes of 28 U.S.C. (Section) 1291. Accordingly, this Court has appellate jurisdiction under 28 U.S.C. (Section) 1291.

<u>**STATEMENT OF ISSUES PRESENTED FOR REVIEW**</u>

From the Plaintiffs' perspective, there are no genuine issues in this appeal. For the purposes of this brief, however, the Plaintiffs state the issues as follows:

1. Officer Painter is not entitled to qualified immunity, as correctly held by the District Court, because Charles Byers was not a threat to anyone, as is required under any legal test for qualified immunity.

2. Officer Painter is not entitled to qualified immunity, as correctly held by the District Court, because it was clearly established that the failure to obey commands by a person in possession of, or suspected to be in possession of a weapon only justifies the use of deadly force if that person makes some sort of furtive or other threating movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that immediately threatens the safety of the officer or another person. Charles Byers never made any threatening movements at all and was backing away from Officer Painter. Therefore, the deadly force used by Officer Painter could not be considered reasonable under any analysis.

<u>**STATEMENT OF THE CASE**</u>

The Plaintiffs filed an Amended Complaint in which they added Officer Painter and Chesterfield County as defendants. In response to Plaintiffs' Amended Complaint, Officer Painter filed a Motion to Dismiss. On January 13, 2025 the District Court issued a Memorandum Opinion

granting in part and denying in part the Motion to Dismiss. The District Court correctly denied Officer Painter's motion relative to the Fourth Amendment claim. Officer Painter appealed the ruling of the District Court to this Court.

## STATEMENT OF FACTS

In or about August 2008, Charles M. Byers ("Charlie") was diagnosed with schizoaffective disorder, a rare mental illness that, in Charlie's case, is related to both schizophrenia and bipolar disorder. JA46 at ¶ 32. Beginning in or around May 2023, Charlie's condition began to worsen, and Charlie's parents noticed that he was decompensating, becoming more isolated, paranoid, and anxious. JA47 at ¶ 35. In the days leading up to July 5, 2023, Charlie told his parents that he needed help and Charlie's parents noticed that he was very anxious, confused, and delusional – often having conversations with someone who was not there, sometimes mumbling and laughing to himself. He would often see things that were not there and believe that things that were there were fake. In other words, Charlie was struggling with reality and desperately needed help for his mental illness. JA48 at ¶ 35. On July 5, 2023 at approximately 4 p.m. Charlie's mother drove Charlie, a Medicaid recipient, to HCA-Chippenham and waited while Charlie went through intake at HCA-Chippenham. JA48 at ¶ 36. On July 6, 2023 at 2:08 a.m., Magistrate Martesha M. Bishop issued a temporary detention order (TDO 763GM-2300000955 – "TDO") for Charlie. JA50 at ¶ 42. The TDO was served upon Charlie at 2:51 a.m. on July 6, 2023 by the CCPD and its officers. However, Charlie was not admitted to Tucker Pavilion until 3:00 p.m. on July 6, 2023. During this period, Charlie was monitored by the CCPD and its officers and the RPD and its officers, who were stationed at HCA-Chippenham. JA51 at ¶ 44. Pursuant to Virginia Code § 37.2-813, upon the issuance of the TDO and Charlie's assignment to HCA-Chippenham, Charlie could <u>only</u> be lawfully released from the TDO

and HCA-Chippenham, prior to his commitment hearing, by a district court judge or special justice, upon finding that Charlie no longer met the criteria for a TDO, or by the director of HCA-Chippenham's Tucker Pavilion, upon finding, based on an evaluation conducted by the psychiatrist or clinical psychologist treating Charlie, that Charlie no longer met the criteria for a TDO. None of this ever happened. JA52 at ¶ 44. Charlie was <u>never</u> lawfully released from the TDO or from HCA-Chippenham. In fact, Charlie was never evaluated by a psychiatrist or clinical psychologist at HCA-Chippenham. JA52 at ¶ 44. For the reasons fully described in the Amended Complaint, Charlie was unlawfully arrested and taken to the City of Richmond jail, in violation of Virginia Code § 37.2-813. JA18-JA78. In the evening hours of July 6, 2023, Charlie, a diagnosed schizophrenic, who was paranoid, delusional, and under a TDO in need of mental health treatment because, due to his mental illness, he lacked the capacity to protect himself from harm, was released from the City of Richmond jail. JA61 at ¶ 51. In his paranoid and delusional state, Charlie walked from the City of Richmond jail to his home in Chesterfield, approximately fourteen (14) miles away. JA61 at ¶ 51. However, Charlie, suffering from his mental illness, was unable to find his home or to recognize his parents' house as his home, so he wandered around his neighborhood and adjoining neighborhoods seemingly searching for his home for several hours. JA61 at ¶ 51. At approximately 12:49 p.m. on July 8, 2023 the CCPD received a 911 call in which the caller reported that Charlie had attempted to enter her house that was located at 1224 Wycliff Court in Chesterfield County, just a few blocks from Charlie's home. JA61 at ¶ 52. When asked by the caller "what are you doing?" Charlie responded, "I'm sorry, I thought this was my parents' house". Charlie then asked the caller if he could have a glass of water, to which the caller said "no". JA61 at ¶ 52. The caller then reported that Charlie tried opening a neighbor's door, was talking to a neighbor, and then entered another

6

neighbor's garage. JA61 at ¶ 52.  The 911 dispatcher relayed to the CCPD that there had been an attempted breaking and entering and vandalism and police were dispatched to the location of 1224 Wycliff Court. JA61 at ¶ 52.  During the time in the neighbor's garage Charlie had apparently picked up a small hatchet and was holding it in his right hand when CCPD officers arrived at the scene. JA62 at ¶ 52.  Officer Painter and another CCPD officer arrived at the scene in different vehicles. The first officer pulled up and immediately drew her gun and pointed it at Charlie. JA62 at ¶ 53. Officer Painter pulled in front of Charlie and immediately pulled his gun on Charlie, which seemed to startle him.  JA62 at ¶ 53.  Charlie immediately began walking away from the two CCPD officers, who had their guns drawn on him and were yelling at him to put down the hatchet. JA62 at ¶ 53. Throughout the remainder of the interaction, Charlie walked backwards away from the two CCPD officers, but the officers continued to pursue him yelling at him to drop the hatchet. JA62 at ¶ 53.  At the encouragement of Officer Painter, the first officer shot a taser at Charlie but apparently missed him. JA62 at ¶ 53.  Just a few seconds later, while the first officer was having what she described as a "brain fart" and was unable to discharge the second taser cartridge in her taser, Officer Painter began shooting Charlie with his 9mm handgun.  JA62 at ¶ 53.  At the time that the first bullet was fired, Charlie was at least 25 feet away from Officer Painter and Charlie's head was turned away from Officer Painter, who continued shooting Charlie.   JA62 at ¶ 53. (BWC Timecode is 00:01:12.655 frame 2181)



Charlie was not a threat to Officer Painter or anyone else, immediate or otherwise, when Officer Painter began shooting at Charlie. JA62 at ¶ 53. After the first three shots Charlie turned and tried to get away from Officer Painter who continued shooting Charlie in his back. JA62 at ¶ 53



Ultimately, Officer Painter shot at Charlie seven (7) times, hitting him five (5) times.

The final 3 or 4 shots were in Charlie's back, which shots were fatal. JA62 at ¶ 53. While Charlie lay on the ground dying and gasping for his last breaths, the two CCPD officers then aggressively handcuffed Charlie. JA62 at ¶ 53.



Before shooting Charlie, Officer Painter did not attempt to speak to Charlie in a professional or nonthreatening way or assess his medical condition or mental or psychological state, even though objective factors required that he do so. JA62 at ¶ 54. In the 911 call, the caller reported that Charlie seemed confused and unsteady and the CCPD acknowledged that Charlie was in distress during his interaction with Officer Painter. JA62 at ¶ 54. Before shooting Charlie, Officer Painter did not attempt to use any other less-lethal force to gain control of the situation. He went immediately to lethal force even though Charlie posed no immediate threat to him or anyone else. JA63 at ¶ 55.

8

Before shooting Charlie, Officer Painter did not attempt to use any de-escalation techniques and did not warn Charlie that he would be shot. JA63 at ¶ 56. Officer Painter's actions or omissions on July 8, 2023, clearly violated Charlie's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution in depriving him of his right to be free from excessive force when Officer Painter fatally gunned him down in the street on July 8, 2023. JA63 at ¶ 57.

Beginning soon after the killing of Charlie by Officer Painter, the CCPD attempted to cover up Officer Painter's actions. In its responses to media requests and in its investigative report the CCPD claimed that Charlie was wielding a hatchet and coming after the officers, who shot him to eliminate the threat. Specifically, the CCPD claimed that "Byers kept advancing on Officers with a weapon in his hand" and that "Officer Painter fired an unknown number of rounds in an attempt <u>to stop the subject's advance</u>." These statements are verifiably untrue and were known to be untrue by the CCPD when the statements were made, as the entire incident was recorded on the officers' BWCs. However, the CCPD refused to release the videos of the shooting, despite multiple requests from Charlie's family and the media, and the CCPD continues to refuse to release the videos to the public. JA63 at ¶ 58. In a further attempt to cover up for Officer Painter's actions, the CCPD successfully avoided the constitutional grand jury process and the necessary prosecution of Officer Painter by, within weeks after the shooting, hiring a company named "Force Science" and its founder, William J. Lewinski, to justify the shooting. William J. Lewinski is well known for using "junk-science" or "pseudoscience" to justify police shootings that are otherwise entirely unjustifiable, and who has been disqualified by numerous courts for his speculative and unfounded opinions. Based on the "junk-science" report of Force Science and the CCPD's investigation of itself and Officer Painter, the Chesterfield Commonwealth's Attorney, Erin Barr, who had only been

in office for a few weeks, chose not to present evidence of Officer Painter's clearly unlawful shooting of Charlie to a grand jury and the CCPD continues to refuse to release the video of the shooting to the public. JA64 at ¶ 59. The obvious reason why the CCPD has gone to great lengths to cover up the unlawful shooting of Charlie is because, at the time of the shooting, the CCPD: 1) had actual knowledge that Officer Painter had a propensity to use excessive force too quickly against citizens; and 2) did nothing to prevent harm to citizens at the hands (or gun) of Officer Painter. The CCPD knew that Officer Painter was quick to use force and that he had been involved in multiple interactions with citizens in which he used excessive force too quickly and the CCPD did nothing about it, allowing Officer Painter to continue to interact with citizens at their peril. JA63 at ¶ 55.

## SUMMARY OF THE ARGUMENT

To survive Officer Painter's motion to dismiss based on his claim of qualified immunity, the Plaintiffs only needed to allege enough facts to state a plausible claim. Based on the only pleading pertinent to this appeal, *i.e.* the Amended Complaint and exhibits, including the BWC video of the subject incident, the Plaintiffs obviously alleged factual content that allowed the District Court (and allows this Court) to draw the reasonable inference that Officer Painter is liable for the misconduct alleged. The facts in this case, as alleged in the Amended Complaint and as contained in the BWC video attached to the Plaintiffs' Amended Complaint, easily support the District Court's correct finding that Officer Painter is not entitled to qualified immunity. To make such legal finding, the District Court carefully reviewed the BWC video and the Amended Complaint and found that there "was no basis for Officer Painter to believe that Mr. Byers was a threat to either officer" or anyone else when Officer Painter fired seven bullets at him, as he was backing and turning away from Officer Painter and then running for his life. Officer Painter killed Charles Byers by shooting him in

his back, as alleged in the Amended Complaint and shown on the BWC video, and Charles Byers was no threat to anyone, immediate or otherwise. Since Charles Byers was not a threat, as correctly found by the District Court, it is immaterial which legal test is applied to the determination of qualified immunity, "Moment of Threat" or "Totality of the Circumstances", as a finding that Charles Byers was no threat when Officer Painter used deadly force must result in the legal finding that Officer Painter is not entitled to qualified immunity, regardless of how the District Court made its correct determination. In any case, since the Plaintiffs adequately alleged that Officer Painter deprived their son, Charles Byers, of his Fourth Amendment right to be free from excessive force, a clearly established right, qualified immunity does not and could not shield him from liability. Therefore, this Court must affirm the District Court's correct finding that Officer Painter is not entitled to qualified immunity.

## ARGUMENT

### I.    Standard of Review

This Court reviews *de novo* a district court's decision denying a motion to dismiss based on qualified immunity. Atkinson v. Godfrey, 100 F.4th 498 (4th Cir. 2024); Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012); Doriety v. Sletten, 109 F.4th 670 (4th Cir. 2024). The purpose of a motion to dismiss is "to test the legal sufficiency of the complaint." Randall v. United States, 30 F.3d 518, 523 (4th Cir. 1994). To survive a Rule 12(b)(6) motion, a complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007). The facts alleged must "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl.

Corp. v. Twombley, 550 U.S. 544, 555, 570 (2007). This plausibility standard does not equate to a probability requirement, but it requires "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Where, as here, the motion to dismiss involves "a civil rights complaint, [the Court] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Edwards, 178 F.3d at 244 (internal quotation marks and citation omitted).

II.     Officer Painter is NOT entitled to qualified immunity as Charles Byers was not a threat to him or anyone else

Where deadly force has been used, the Graham v. Conner, 490 U.S.386 (1989) factor of whether the suspect posed an immediate threat is "particularly important". See Franklin v. City of Charlotte, 64 F.4th 519, 531 (4th Cir. 2023). In such cases, the Court must consider whether a reasonable officer on the scene would have had "probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others." Waterman v. Batton, 393 F.3d 471, 477 (4th Cir. 2005)(quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985). This Court must assess the objective reasonableness of an officer's use of deadly force "based on the totality of the circumstances". Hensley ex rel. North Carolina v. Price, 876 F.3d 573, 582 (4th Cir. 2017)(citing Yates v. Terry, 817 F.3d 877, 883 (4th Cir. 2016), "and based on the information available to the [officer] 'immediately prior to and at the very moment [he] fired the fatal shots,'" Id. (quoting Greenidge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991). "It has long been 'established in this circuit that the reasonableness of an officer's actions is determined based on the information possessed by the officer at the moment that force is employed'". Aleman v. City of Charlotte, 80 F.4th 264 (4th Cir.

2023), See also <u>Waterman</u>, 393 F.3d at 481 (citing <u>Elliott v. Leavitt</u>, 99 F.3d 640, 643 (4th Cir. 1996); See also <u>Betton v. Belue</u>, 942 F.3d 184, 191 (4th Cir. 2019)("We assess the reasonableness of the officer's conduct based on the circumstances confronting the officer immediately prior to and at the very moment he fired his weapon"). As such, this Court has recognized that the "reasonableness determination must focus on the moment that deadly force was used, not the whole episode". <u>Aleman v. City of Charlotte</u>, 80 F.4th 264 (4th Cir. 2023). In this case, Officer Painter was told by the 911 dispatch operator that Charles Byers may have committed a misdemeanor against property. Just seconds later Officer Painter arrived at the scene and saw Charles Byers holding a small hatchet, which is entirely legal. Immediately upon arriving at the scene, Officer Painter pulled his car directly in front of Charles Byers, seemingly startling him, drew his weapon and pointed it at Charles Byers, and commanded that he drop the hatchet. From that point until Officer Painter shot and killed Charles Byers, Charles Byers backed away from Officer Painter. During the entire incident, which only lasted approximately forty-five seconds, Charles Byers never threatened anyone with the hatchet, made no general threats to anyone and most importantly never made any "sort of furtive or other threatening movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that immediately threatens the safety of the officer or another person." <u>Aleman v. City of Charlotte</u>, 80 F.4th 264 (4th Cir. 2023). Therefore, as a matter of clearly established law, Officer Painter's use of deadly force was unreasonable, and Officer Painter is not entitled to qualified immunity. Not a single case cited by Chesterfield County and Officer Painter in their motion to dismiss supported their arguments and this continues in their opening brief. In <u>Sigman v. Town of Chapel Hill</u>, 161 F.3d 782, 786 (4th Cir. 1998), the suspect slashed at officers with a knife, issued threats to the officers and walked toward the officers after being commanded to stop. In

Shaw v. City of Selma, 884 F.3d 1083 (11th Cir. 2018), the suspect, Shaw, turned around and came towards the officer who shot him shouting "shoot it, shoot it." In Blanford v. Sacramento County, 406 F.3d 1110 (9th Cir. 2005), the suspect was wearing a ski mask and carrying a 2 ½ foot cavalry sword, which was a crime, raised the sword in the air and growled at the officers, and was in the process of gaining entry to a residence when the officers opened fire. In Rambert v. City of Greenville, 107 F.4th 388 (4th Cir. 2024), the suspect charged at the officer yelling indecipherably. In Kisela v. Hughes, 138 S.Ct. 1148 (2018), the suspect while holding a large kitchen knife moved towards a nearby woman after not obeying commands by officers to drop the knife. In each of these cases on which the County of Chesterfield and Officer Painter attempt to rely the element missing in this case is present, *i.e.* the suspect made "a furtive or other threatening movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that immediately threatens the safety of the officer or another person." While Chesterfield County and Officer Painter may use scary words like "wield" and "armed" and "clenched" to describe Charles Byers' lawful holding of a hatchet, the fact of the matter is that Charles Byers was holding a hatchet by his side and backing away from Officer Painter when he was shot and killed unjustifiably in violation of Charles Byers' constitutional right to be free from the ultimate Fourth Amendment seizure by death. There is little question that this Graham factor, which is the most important factor, weighs heavily in plaintiffs' favor.

III.   <u>Officer Painter is NOT entitled to qualified immunity as it was clearly established that deadly force could only be used when a suspect makes a threatening move with a weapon—simply disobeying commands from an officer does not entitle an officer to kill the suspect</u>

In his opening brief Officer Painter argues that "the facts of this case are not similar to any of

this Court's precedents holding that officers unreasonably shot an armed individual". However, this Court has repeatedly held that "[a] right need not be recognized by a court in a specific factual context before such right may be considered 'clearly established'". <u>Aleman v. City of Charlotte</u>, 80 F.4th 264 (4th Cir. 2023)(citing <u>Wilson v. Prince George's Cnty</u>, 893 F.3d 213, 221 (4th Cir. 2018). The constitutional right that was violated in this case is the Fourth Amendment right to be free from excessive force and the ultimate "seizure" of death under the circumstances of this case, which are: while holding a hatchet, backing away from officers, and not obeying commands by the officers to drop the hatchet.

On July 8, 2023 it was clearly established that:

[T]he failure to obey commands by a person in possession of, or suspected to be in possession of, a weapon only justifies the use of deadly force if that person make some sort of furtive or other threatening movement with the weapon, thereby signaling to the officer that the suspect intends to use it in a way that immediately threatens the safety of the officer or another person

<u>Aleman v. City of Charlotte</u>, 80 F.4th 264 (4th Cir. 2023)(holding that the aforesaid rule of law was clearly established in 2017 and possibly as early as 1991).

The main argument that Chesterfield County and Officer Painter made in the District Court in their memorandum in support of the motion to dismiss was that "an objectively reasonable officer would believe that a criminal suspect, armed with a hatchet, posed an immediate threat of serious bodily injury or death to Corporal Painter and the Female Officer". However, they made no argument or contention that Charles Byers made any type of threatening movement. Now, for the first time, Chesterfield and Officer Painter make such a contention in their opening brief, claiming that Charles Byers raised the hatchet in a threatening manner on several occasions to try to justify his killing. Thankfully, again, the incident was recorded on the BWC and this Court can view that Charles Byers

did not make any type of threatening movement of any kind, as the District Court correctly found. Remember, Chesterfield and Officer Painter also claimed that Charles Byers was advancing on the officers and that they shot him to stop his advance, which was verifiably untrue, but they withheld the video so no one could see the truth. Based on the magical turnaround by Chesterfield County and Officer Painter, it should be clear that that Chesterfield County was unaware of the Constitutional limitations on its officers' use of deadly force and, thus, its officers truly believed that if a suspect holding a hatchet failed to comply with commands, the use of deadly force was justified. Now that they have been made aware of the law, they conveniently claim that any normal movement by Charles Byers was threatening and menacing, of which there is no mention at all until the opening brief. This is just more of the same from Chesterfield County and Officer Painter.

## CONCLUSION

For the reasons set forth herein, the Plaintiffs respectfully request that the Court affirm the decision of the District Court.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 34 and Local Rule 34(a), the Plaintiffs respectfully request oral argument if the Court deems it necessary to address any questions or concerns about the facts, argument, or to otherwise assist in the decisional process.

Respectfully submitted,

MARGARET P. BYERS and MICHAEL C. BYERS, Co-Administrators of the Estate of CHARLES M. BYERS, Deceased,

BY:___/s/ Paul McCourt Curley_____
                    Counsel

Paul McCourt Curley, Esq. VSB No. 43794
SIX EAST LAW GROUP –
CURLEY LAW FIRM, PLLC
6 East Broad Street
Richmond, Virginia 23219
Telephone: (804) 355-8273
E-Mail: paul.curley@sixeastlaw.com
www.sixeastlaw.com
  *Counsel for Plaintiffs/Appellees*